Naomi T. CRUMLEY, Plaintiff,

v.

DELAWARE STATE COLLEGE, Defendant.

Donald B. ROBERTSON, Plaintiff,

v.

HERCULES INCORPORATED, Defendant.

Karin B. KUNTZ, Plaintiff,

v.

PENCO CORPORATION and William D. Houser, Defendants.

Civ. A. Nos. 90–429MMS, 90–711MMS, 91–89MMS, 92–25MMS.

United States District Court, D. Delaware.

June 11, 1992.

---

Thomas S. Neuberger, Wilmington, Del., of counsel: Robert T. Vance (argued for retroactivity), of Vance & Jackson, P.C., Philadelphia, Pa., for plaintiff Naomi T. Crumley.

Catherine T. Hickey, of Schmittinger & Rodriguez, Dover, Del., for defendant Delaware State College.

Eugene J. Maurer, Wilmington, Del., of counsel: Alan B. Epstein, of Jablon, Epstein & Wolf, Philadelphia, Pa., for plaintiff Donald B. Robertson.

Thomas R. Hunt, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Hercules Inc.

Vivian A. Houghton, Wilmington, Del., of counsel: Donald C. Holmes, and Maryan Ramey, of Holmes, Schwartz & Gordon, Easton, Md., for plaintiff Karin B. Kuntz.

Somers S. Price, Jr., and Kathleen Furey McDonough, of Potter Anderson & Corroon, Wilmington, Del., of counsel: Arthur M. Brewer, and Patrick M. Pilachowski (argued against retroactivity), of Shawe & Rosenthal, Baltimore, Md., for defendants Penco Corp. and William D. Houser.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Presently before the Court is whether the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 [hereinafter the "Act" or the "1991 Act"] applies retroactively to three separate pending cases.[1] On May 28, 1992, the Court heard consolidated oral arguments on this issue. For the reasons set forth below, the Court con-

---

1. The Supreme Court has yet to address this issue. In *Gersman v. Group Health Ass'n Inc.*, — U.S. —, 112 S.Ct. 960, 960–61, 117 L.Ed.2d 127 (1992), the Supreme Court granted certiorari on a case from the Court of Appeals for the District of Columbia. The Court then vacated the judgment and remanded the case to the Court of Appeals for "further consideration in light of the Civil Rights Act of 1991."

cludes: (1) plaintiffs are not entitled to retroactive application of section 102 permitting compensatory and punitive damages and a jury trial; (2) the above conclusions apply to cases involving conduct occurring prior to the enactment of the 1991 Act irrespective of whether suit was filed in federal court prior to or subsequent to the Act's enactment.

## I.

*Crumley v. Delaware State College,* Nos. 90–429/90–711–MMS, involves two consolidated cases. Plaintiff, Dr. Naomi T. Crumley ("Crumley"), a Black American, alleges Delaware State College (the "College") denied her a promotion to Professor in the spring of 1988 because of her race. Plaintiff alleges she was then denied reinstatement to the position of Associate Professor of Education and was denied full sick leave benefits in retaliation for her having filed a charge of discrimination against the College as a result of the College's failure to promote her to Professor in the Spring of 1988. Plaintiff makes the final allegation that the College has a pattern and/or practice of failing to promote blacks to Professor. Plaintiff urges the 1991 Act should be applied retroactively and seeks to amend the Complaint to demand a jury trial and to ask for compensatory and punitive damages up to the limits specified in section 102 of the Act.

In *Kuntz v. Penco Corp.,* No. 92–25–MMS, plaintiff Karin B. Kuntz ("Kuntz") filed a Complaint in federal court on January 15, 1992. Plaintiff had been employed by defendant, Penco Corporation ("Penco"), from May 27, 1986 to November 27, 1990. Following employment termination by Penco, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging a violation of Title VII of the Civil Rights Act of 1964. After receiving a Right to Sue Notice from the EEOC, plaintiff filed this civil action

alleging sexual harassment against Penco and its employee William D. Houser, seeking to recover damages for violation of Title VII and the Civil Rights Act of 1991. Defendant has moved to strike, or in the alternative to dismiss, three parts of plaintiff's Complaint asking for compensatory and punitive damages and a jury trial. Plaintiff urges because she filed suit in federal court several months after the enactment of the 1991 Act she is entitled to have the Act applied in full to her case even though the alleged discriminatory conduct occurred before the Act's enactment.

Finally, in *Robertson v. Hercules, Inc.,* No. 91–89–MMS, plaintiff, Donald Robertson ("Robertson"), filed his Complaint in this Court on February 22, 1991, charging defendant Hercules, Inc. ("Hercules"), with violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Delaware Fair Employment Practices Act, 19 *Del.C.* § 710, *et seq.,* the Employment Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.,* and the public policy of the State of Delaware, in that he was forced to retire because of his age after 37 years with defendant. Plaintiff filed a motion for clarification urging section 107 of the Act should be applied to pending ADEA cases.

## II.

*Crumley v. Delaware State College,* Nos. 90–429/90–711–MMS presents the issue of whether the 1991 Civil Rights Act should be applied retroactively with respect to the Act's provisions involving compensatory and punitive damages and the right to demand a jury trial. The Civil Rights Act of 1991 was signed into law on November 21, 1991. The Act is a comprehensive bill designed to expand certain remedies available to victims of discrimination and to undo the effects of recent Supreme Court decisions.[2] Section 102 authorizes compen-

---

**2.** Section 101 "reverses" the limitations imposed on the scope of 42 U.S.C. § 1981 by *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Section 105 codifies the pre-*Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d

733 (1989), "business necessity" and "job related" standards. Section 107 changes the liability limitations imposed on mixed motive cases by the decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The collateral challenge holdings of *Martin v.*

satory and punitive damages in Title VII intentional discrimination cases. That same section also authorizes jury trials. Accordingly, if the Act is applied retroactively a plaintiff is entitled to compensatory damages and a jury trial and may also be entitled to punitive damages.[3]

In determining whether the 1991 Act applies retroactively, "[t]he starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). While there are no provisions in the 1991 Act stating specifically whether or not the damages and jury sections of the Act apply to cases already pending in federal court, there are three sections of the 1991 Act that are potentially relevant to the analysis of retroactivity: Sections 402(a), 402(b) and 109(c).

SEC. 402. EFFECTIVE DATE.

(a) In General.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) Certain Disparate Impact Cases.—Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

[Section 109](c) Application of Amendments.—The Amendments made by this section shall not apply with respect to the conduct occurring before the date of the enactment of this Act.

The Court of Appeals for the Seventh Circuit noted that the language of Section 402(a) is susceptible to several meanings:

The fact that the 1991 Act becomes effective on the date of enactment provides no guidance as to whether the Act applies to pending cases. Indeed, this clause [section 402(a)] is susceptible to several interpretations: it might mean that the 1991 Act applies to conduct which occurred after the enactment, it might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enactment, it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings, or it might mean that the Act's procedural provisions apply to proceedings begun after enactment and the substantive provisions apply to conduct that occurs after the enactment.

*Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929, 932 (7th Cir.1992).

---

*Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), and *Lorance v. AT & T*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), are "reversed" by sections 108 and 112 respectively. Section 109 "reversed" *E.E.O.C. v. Arabian American Oil Co. & Aramco Services Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), by mandating that Title VII applies to United States companies operating outside of the territorial jurisdiction of the United States. The expert witness fee limitation imposed by the Supreme Court in *West Virginia University Hospitals, Inc. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), is "reversed" by section 113.

The word, "reversed," is in quotations because technically, Congress cannot "reverse" or "overrule" decisions of the Supreme Court. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803) (Congress cannot add to nor detract from the powers of the courts granted in the Constitution). To the extent Congress disagrees with the Supreme Court's interpretation of a law, Congress may promulgate new law for interpretation by the Court. *Id.* at 178–180.

**3.** Section 102(b)(1) prevents recovery of punitive damages by a complaining party when the defendant is a "government, government agency or political subdivision". At oral argument defendant, Delaware State College, urged because it is a "government agency" the Court should prohibit an award of punitive damages against the College even if the Court determines the punitive damage section of the 1991 Act should be applied retroactively. Because the Court holds that the punitive damage section of the 1991 Act should *not* be applied retroactively, the Court does not reach the question of whether Delaware State College is a "government agency" under section 102(b)(1) of the 1991 Act.

It is clear the express language of Section 402(a) does not resolve the retroactivity question.

Despite the inherent ambiguity of Section 402(a), plaintiffs urge that reading clauses (a) and (b) of section 402 and section 109(c) *together* makes it clear that the Civil Rights Act applies to cases which were pending at the time of its enactment. Sections 402(b) and 109(c) carve out exceptions to the Act. The Supreme Court has stated on many occasions that "no provision [of a statute] should be construed to be entirely redundant." *See Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988); *see also Arcadia v. Ohio Power Co.*, 498 U.S. 73, 111 S.Ct. 415, 419, 112 L.Ed.2d 374 (1990). According to plaintiffs, if the Civil Rights Act only applied prospectively, sections 402(b) and 109(c) would be meaningless. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) (noting Supreme Court's hesitancy "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."); *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (citations omitted) (" 'The cardinal principle of statutory construction is to save and not to destroy.' ... It is [a court's] duty 'to give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section....").

Another fair reading of section 402(b), however, is that because that section was inserted in the 1991 Act to ensure that the Act's provisions would not apply to the parties in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), "Section 402(b) is nothing more than a clear assurance that courts would not apply the 1991 Act to the Wards Cove litigation regardless of how the courts might eventually construe the 1991 Act's applicability to pending cases." *Mozee*, 963 F.2d at 933.[4] Similarly, section 109(c), which was inserted to "overrule" the holding in *E.E.O.C. v. Arabian American Oil Co. & Aramco Service Co.*, — U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), can be construed as merely an extra assurance that this section's provisions will apply prospectively regardless of how the courts eventually apply the Act's other provisions.

> In other words, Congress may have intended and envisioned that under the then-current judicial precedent courts would construe the Act in a manner that would require only a prospective application, but Congress, realizing that court interpretation may change over time, may have wanted to ensure that judicial interpretation would not alter the prospective application of the Act in these two circumstances.

*Mozee*, 963 F.2d at 933.

As summarized by the Court of Appeals for the Seventh Circuit,

> Section 402(a)'s language is hopelessly ambiguous as to the issue of whether Congress intended the 1991 CIVIL RIGHTS ACT to apply RETROACTIVELY to pending cases. And, although Sections 402(b) and 109(c) are explicitly prospective, the language is not sufficiently probative of congressional intent to suggest that Congress intended a retroactive application of the remainder of the Act. Consequently, we cannot divine from the Act's language whether Congress intended the Act to apply retroactively to pending cases.

*Id.* at 933.

Because the language of the 1991 Act provides no mandate as to Congress' in-

---

**4.** *See Thompson v. Johnson & Johnson Man. Info.*, 783 F.Supp. 893, 895 (D.N.J.1992) (citing 137 Cong.Rec. S15, 483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth) (Section 402(b) "should not be read in derogation of the sponsors' intention not to provide for retroactive effect...."); *id.* at S15, 478 (statement of Sen. Dole) ("At the request of the Senators from Alaska, section 22(b) specifically points out that nothing in the Act will apply retroactively to the Wards Cove Packing Company, an Alaska company that spent 24 years defending against a disparate impact challenge."); 137 Cong.Rec. H9, 512 (daily ed. Nov. 7, 1991) (statement of Rep. Hyde) (*Wards Cove* "has been in the courts for 24 years and someday it ought to be closed, but this bill is prospective, and therefore Wards Cove is not affected by it.")).

tent, the Court turns to the Act's legislative history. Unfortunately, the legislative history is even more ambiguous than the Act's language. *See Id.* at 934 ("A clear indication of congressional intent cannot be deciphered from the legislative history...."); *Vogel v. City of Cincinnati,* 959 F.2d 594, 598 (6th Cir.1992) ("The legislative history does not provide any guidance on this question."); *but see Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1378 (concluding that the legislative intent is clear).

Defendants first argue that because President Bush vetoed the 1990 Civil Rights Act which contained an explicit retroactive provision, but signed the 1991 Act, the 1991 Act reflects a legislative compromise that the Act should be applied only prospectively. Indeed, the Court of Appeals for the Eighth Circuit embraced this same argument in *Fray,* 960 F.2d at 1378. The Court of Appeals noted: "When a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process." *Id.* (citing Norman J. Singer, 2A Sutherland Statutory Construction § 48.04 (5th ed. 1992)).

Judge Heaney dissenting in *Fray,* however, points out that the majority's conclusion is not the only conclusion one can reasonably draw from Congress' removal of the retroactivity provisions of the Act after the President's initial veto. Instead, "it is dispositive merely of Congress's intent to leave the retroactivity decision to the courts." *Fray,* 960 F.2d at 1379 (Heaney, dissenting). Additionally, any inference which one might draw from Congress' removal of the retroactivity provisions of the Act after the President's veto "is negated by the fact that Congress did not adopt the Bush Administration's proposed bill which, in contrast, contained explicitly prospective language." *Mozee,* 963 F.2d at 933.[5]

Not surprisingly, the legislative history contains statements that both favor and disfavor the retroactive application of the Act. As described by the Court of Appeals for the Seventh Circuit,

> One such example of contradictory statements of intent can be seen by comparing Senator Kennedy's indication that the 1991 Civil Rights Act would be retroactively applied to pending cases under judicial precedent, 137 Cong.Rec. S 15485 (daily ed. Oct. 30, 1991) to Senator Danforth's indication that the Act would be prospectively applied under Supreme Court precedent, *id.* at S 15483.

*Mozee,* 963 F.2d at 934. Accordingly, it is impossible to determine legislative intent from the statements of various members of Congress.

■ Defendants make the final argument that the Court should give deference to the EEOC's statement on December 27, 1991, that it would not seek damages under the Act for events occurring before November 21, 1991. Indeed, several district courts and the Court of Appeals for the Sixth Circuit have found this same argument persuasive. *Vogel,* 959 F.2d at 598. *See also Tyree v. Riley,* 783 F.Supp. 877, 889 (D.N.J.1992) (according EEOC Policy Statement "great deference"); *McCullough v. Consolidated Rail Corp.,* 785 F.Supp. 1309, 1314 (N.D.Ill.1992). In *Vogel,* the Court noted: "Generally, absent clear legislative intent, the construction given a statute by the agency that administers it is entitled to deference provided it is reasonable." 959 F.2d at 598 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). *See also EEOC v. Commercial Office Products Co,* 486 U.S. 107, 115, 108 S.Ct. 1666, 1671, 100 L.Ed.2d 96 (1988) ("[I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other stan-

---

5. Section 14 of the Bush proposal provides: This Act and the amendments made by this Act shall take effect upon enactment. The amendments made by this Act shall not apply to any claim arising before the effective date of this Act.
H.R. 1375, 102nd Cong., 1st Sess. (1991).

dards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference.").[6] To the extent that *Vogel, Tyree,* and *McCullough,* hold that the EEOC's Policy Statement is entitled to deference, this Court respectfully disagrees.

Recently the Supreme Court reiterated the proper deference to be afforded the EEOC's guidelines;

> In *General Electric Co. v. Gilbert,* 429 U.S. 125, 140–146, 97 S.Ct. 401, 410–413, 50 L.Ed.2d 343 (1976), we addressed the proper deference to be afforded the EEOC's guidelines. Recognizing that "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations," we held that the level of deference afforded " 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Id.,* at 141, 142, 97 S.Ct., at 410, 411 (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

*E.E.O.C. v. Arabian American Oil Co.,* 111 S.Ct. at 1235.[7] In its policy statement on the retroactivity of the 1991 Act, the EEOC first discussed the ambiguities in the language of the statute and the lack of definitive guidance from the legislative history. Unable to glean a clear congressional intent, the EEOC hinged its conclusion on its interpretation of two seemingly opposite lines of Supreme Court cases: *Bradley v. Richmond Bd.,* 416 U.S. 696, 94 S.Ct.

2006, 40 L.Ed.2d 476 (1974), and *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). After discussing the tension between these two cases the Commissioner stated: *"Bowen* represents the Supreme Court's more recent holding on this issue, and the Commission will follow the dictates of that case with regard to the retroactivity of the damages provisions." *EEOC: Policy Guide on Retroactivity of the Civil Rights Act of 1991,* Labor Relations Reporter (BNA), Vol. 8c, No. 688, at 405:6971, 405:6975 (Dec. 27, 1991). Because the EEOC's expertise does not encompass analysis of Supreme Court cases, this Court will not rest its holding on deference to the EEOC's Policy Statement. *See Ayala–Chavez v. U.S. I.N.S.,* 945 F.2d 288, 294 (9th Cir.1991) (noting "[q]uestions of law that can be answered with 'traditional tools of statutory construction' are within the special expertise of courts, not agencies . . . ."); *see also Smith v. Petra Cablevision Corp.,* 793 F.Supp. 417, 425 (E.D.N.Y. 1992) (noting "the EEOC's policy statement was not based on any particular expertise it possesses but rather upon an analysis of how the Commission expected the courts to resolve the conflict between *Bradley* and *Bowen."); Lute v. Consolidated Freightways Inc.,* 789 F.Supp. 964, 966 (N.D.Ill. 1992) (noting "[b]ecause the EEOC has no statutory mandate or special expertise on the general principles of retroactivity, the EEOC policy statement is entitled to no more deference than other authors commenting on the matter."); *cf. INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (noting "[t]he question whether Congress intended

---

**6.** In *Commercial Office Products,* the Supreme Court granted certiorari to resolve a conflict between the First and Tenth Circuits. "The First Circuit had upheld the EEOC's view that a waiver of the right to initially process a charge constitutes a 'termination,' reasoning that the language of the Act is ambiguous and the history and purposes of the Act support the EEOC's construction." 486 U.S. at 114, 108 S.Ct. at 1671. The Tenth Circuit, on the other hand, "reasoned that a state agency 'terminates' its proceedings within the meaning of § 706(c) only when it 'completely surrenders its jurisdiction over a charge.' " *Id.* The Court ultimately reversed the Tenth Circuit.

**7.** In *Arabian American Oil Co.,* the Supreme Court held that Title VII does not apply extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad. 111 S.Ct. at 1229. Petitioners urged the Court to give due deference to the EEOC's conclusion that Title VII applies abroad. *Id.* at 1231. Although the Civil Rights Act of 1991 effectively "reverses" this holding, the Supreme Court's discussion of the appropriate deference to be afforded to EEOC guidelines remains valid.

the two standards to be identical is a pure question of statutory construction for the courts to decide.").[8]

Since both the language of the 1991 Act and its legislative history are unclear, the Court must to look to judicial precedents for guidance. As pointed out by Judge Cohill, however, "[u]nfortunately, left to its own devices, the judiciary has not been anymore unified than the legislature." *Sample v. Keystone Carbon Co.*, 786 F.Supp. 527, 529 (W.D.Pa.1992). Much of the confusion stems from the existence of two lines of Supreme Court cases that are in "apparent tension." *Compare Bradley v. Richmond Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), *with Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

In *Bradley*, the Court applied a newly enacted attorneys' fees statute to a pending case. The Court anchored its holding "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. In finding that no manifest injustice resulted from the retroactive application of attorneys' fees, the Court noted the Board was already subject to the common-law availability of an award. *Id.* at 721, 94 S.Ct. at 2021.

In *Bowen*, a district court invalidated Department of Health and Human Services ("HHS") 1981 regulations regarding reimbursable Medicare costs for hospitals.

HHS had failed to provide notice and an opportunity for public comment before issuing the regulations. HHS then properly reissued the regulations and applied them retroactively to 1981. When HHS sought to recoup sums previously paid to the hospitals as a result of the previous court ruling, the hospitals sued, challenging the Secretary's authority to issue retroactive regulations. The Court agreed that HHS had no legislative authority to issue retroactive rules. *Bowen*, 488 U.S. at 215, 109 S.Ct. at 475. In seeming contrast to *Bradley*, the Court noted in dicta, "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471.

Justice O'Connor writing for the Court in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), noted the "apparent tension" between the two cases, but declined to reconcile them because under either view, the congressional intent in that case was clear. *Id.* at 837, 110 S.Ct. at 1577. As it is not within the province of lower courts to determine when Supreme Court decisions in one line of cases effectively overrule Supreme Court decisions in another line of cases, *see Rodriguez de Quijas v. Shearson/American Express Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989),[9] this Court is left with the difficult task of reconciling the *Bradley* and *Bowen* line of cases "in a manner that comports with the policies un-

---

**8.** Defendants also argue the Court should give deference to the Statement of President George Bush Upon Signing. *See* Signing Statement, P.L. 102–166 (November 25, 1991). President Bush adopted the October 30 and November 5 statements of Senator Dole (stating the Act was to be applied prospectively) as the interpretation which would be employed by the executive branch. While it is true that when necessary, courts may turn to alternative sources for guidance, *see Securities Indus. Ass'n v. Board of Governors of Federal Reserve*, 468 U.S. 137, 142, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (relying on agency interpretation); *see also City of Pleasant Grove v. United States*, 479 U.S. 462, 468, 107 S.Ct. 794, 798, 93 L.Ed.2d 866 (1987) (using Attorney General opinion as support for

interpretation), this Court believes the President's Signing Statement carries no more interpretative weight than the EEOC policy statement.

**9.** In his concurrence in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, Justice Scalia resolved the conflict in favor of *Bowen*. Notably, the Scalia concurrence was adopted by Justice Thomas as Court of Appeals judge in *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963 n. 6 (D.C.Cir. 1990). *See also Kimble v. DPCE, Inc.*, 784 F.Supp. 250 (E.D.Pa.1992) (favoring *Bowen* but also discussing the *Bradley* analysis); *Tyree v. Riley*, 783 F.Supp. 877 (same).

derlying the need for prospective versus retroactive application." *Mozee,* 963 F.2d at 935.

Before it was reversed in part, the Court of Appeals for the Third Circuit in *Bonjorno v. Kaiser Aluminum & Chem. Corp.,* 865 F.2d 566 (3d Cir.1989), *aff'd in part, rev'd in part,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), attempted to reconcile *Bradley* with the long standing rule of statutory construction that statutes are presumed to have only "prospective" effect and will be given retroactive effect only if there is affirmative legislative direction to do so. The Court noted,

> [U]pon closer examination, the two principles are not in conflict here. While the term "retroactive" is commonly used to refer to statutes that operate on pre-enactment transactions and pre-existing rights or obligations, a statute is not "retroactive" simply because facts from the pre-enactment period are implicated. The presumption against "retroactivity" has generally been applied only when application of the new law would affect rights or obligations existing prior to the change in the law.

*Bonjorno,* 865 F.2d at 573 (citing *United States v. Security Indus. Bank,* 459 U.S. 70, 78, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Weaver v. Graham,* 450 U.S. 24, 29–30, 101 S.Ct. 960, 964–65, 67 L.Ed.2d 17 (1981); *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)).

Eight months after it issued *Bonjorno,* the Court of Appeals noted, " 'the first rule of construction is that legislation must be considered as addressed to the future not the past.' " *Davis v. Omitowoju,* 883 F.2d 1155, 1170 (3d Cir.1989) (quoting *United States v. Security Indus. Bank,* 459 U.S. at 79–80, 103 S.Ct. at 413 (quoting *Union Pacific R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). The Court then quoted *Bonjorno,* 865 F.2d at 573: "We have noted that this rule 'has generally been applied only when application of the new law would affect rights or obligations existing prior to the change in the law.' " *Davis,* 883 F.2d at 1170–71.

In a footnote, the Seventh Circuit Court of Appeals discussed the . *Bowen/Bradley* tension and concluded, "[a]ny tension between the two lines of precedent is negated because, under *Bradley,* a statute will not be deemed to apply retroactively if it would threaten manifest injustice by disrupting vested rights." *Federal Deposit Ins. Corp. v. Wright,* 942 F.2d 1089, 1095 n. 6 (7th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992). This resolution seems consistent with the Third Circuit Court of Appeal's observation that legislation must be considered addressed to the future when the new law affects rights or obligations. *Davis, supra* at 1170. Indeed, it seems likely that the Third Circuit Court of Appeals would accept the Seventh Circuit's reconciliation of the two lines of cases given that the Third Circuit Court of Appeals has consistently cited *Bradley* after *Bowen* was decided. *See e.g. Bonjorno,* 865 F.2d 566; *United States v. Jacobs,* 919 F.2d 10 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991); *Air–Shields, Inc. v. Fullam,* 891 F.2d 63 (3d Cir.1989); *U.S. Healthcare, Inc. v. Blue Cross of Philadelphia,* 898 F.2d 914 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). Accordingly, to determine whether retroactive application of the 1991 Act would affect "rights or obligations prior to the change in the law," *Davis,* 883 F.2d at 1170, the Court will employ the "manifest injustice" test outlined in *Bradley. See Thomas v. Frank,* 791 F.Supp. 470 (D.N.J.1992) (applying the same analysis).

*Bradley* dictates that a Court look to the following three factors to determine whether a statute is presumed applicable to cases pending at the time of the statute's enactment: (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights. *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

### 1. The Nature and Identity of the Parties

"In considering the nature and identity of the parties a court must ascertain both

whether the government is a party to the action and whether the litigation is brought to vindicate an important public interest." *Robinson v. Davis Memorial Goodwill Industries,* 790 F.Supp. 325, 330 (D.D.C. 1992). "Where the matter involves private parties with purely private concerns, courts are reluctant to apply a new statute retroactively." *Thomas v. Frank,* 791 F.Supp. at 474–75 (citing *In re Busick,* 831 F.2d 745, 748–49 (7th Cir.1987)). As noted by the court in *Stender v. Lucky Stores, Inc.,* however, when a civil rights case involves disputes between private parties, it also "involves matters of great public concern— remedying race and sex discrimination and promoting equality." 780 F.Supp. 1302, 1307 (N.D.Cal.1992); *see Bradley v. Richmond School Bd.,* 416 U.S. at 719, 94 S.Ct. at 2020 (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)) (discussing Title II and noting that when a plaintiff brings a civil rights action, "he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."); *see also Robinson, supra,* at 330; *but see Kimble v. DPCE, Inc.,* 784 F.Supp. 250, 253 (E.D.Pa.1992) (concluding that retroactive application of the Act's provisions is not a matter of significant national concern because "[a]ny violation of plaintiff's civil rights will still be adequately redressed without retroactive application of the Act, and a prospective application will not subtract from the Act's deterrent effect on any would-be violators of Title VII."). Because the purpose of the Civil Rights Act of 1991 is to remedy discrimination, the first prong of the *Bradley* test tilts towards retroactivity.

### 2. *Nature of the Rights Involved and the Nature of the Impact of the Change in Law Upon Those Rights*

When examining the second factor a court must consider whether the Act would "infringe upon or deprive a person of a right that had matured or become uncondi-

tional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. "The third concern has to do with the nature of the impact of the change in law upon existing rights, or, to state it another way, stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Id.* Because the second and third factors are interrelated the Court will analyze them together.

Plaintiffs urge defendants have no unconditional right to limit plaintiffs to a particular type of remedy. According to plaintiffs, "the prospect of increased damages does not alter any substantive rights of ... [a defendant].[10] Congress has simply provided new remedies for existing rights." (Pl. Crumley's Br. in Support of her Motion to Amend the Complaint, Dkt. 40 at 23) (citing *United States v. R.W. Meyer Inc.,* 889 F.2d 1497, 1506 (6th Cir.1989), *cert. denied* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990)); *see also Robinson,* 790 F.Supp. at 330; *Womack v. Lynn,* 504 F.2d 267, 269 (D.C.Cir.1974) (noting the presumption of retroactivity applies to "a procedural statute that affects the *remedies* available to ... employees suffering from employment discrimination."); *cf. Ettinger v. Johnson,* 518 F.2d 648, 651 n. 7a (3d Cir.1975) (discussing the holding in *Womack* ).

Without deciding the issue, the Seventh Circuit Court of Appeals discussed the rationale for applying compensatory damages retroactively:

Granted, the greater an award of damages for the proscribed, unwanted conduct, the less likely that persons and entities will perform this unwanted conduct. Nonetheless, the traditional theory underlying at least compensatory damages is that they are meant to compensate parties for their losses. *See* Dan B. Dobbs, *Remedies* § 3.1 (1973). Because society's valuation of a victim's losses understandably changes over time, it does not seem unfair to force litigating parties to comply with the more recent

---

**10.** Plaintiff Kuntz argued there are no vested rights in someone sexually harassing people.

(Plaintiff Kuntz's Reply Brief, Dkt. 9 at 12.

statutory changes with regard to damages.

*Mozee, supra* at 939. *See also Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990) (quoting *United States v. Vanella,* 619 F.2d 384, 386 (5th Cir.1980) (" 'statutory changes that are procedural or remedial in nature apply retroactively.' "). After stating the rationale for applying the compensatory damage provision retroactively, the Seventh Circuit Court of Appeals noted there is a "flip side." *Mozee, supra* at 940: "In short, it may cause undue confusion to require a trial court to conduct a provision-by-provision analysis of an act in order to distinguish between those provisions regulating procedure and damages and those provisions that affect substantive rights and obligations." *Id.* While a bright line test has some appeal, this Court does not believe going provision-by-provision will prove too heavy a burden given the importance of civil rights to the citizens of this nation.

In addition to the "flip side" discussed by the Seventh Circuit Court of Appeals, defendants argue that because compensatory and punitive damages were unavailable to victims of discrimination prior to the 1991 Act, *see Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 138 (3d Cir.1986), *cert. denied,* 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986), defendants had a recognized right to be free from damages at law in Title VII actions. *See Thomas v. Frank,* 791 F.Supp. at 475 (concluding that retroactive application of the compensatory damages provision of § 102(b) of the 1991 Act "would infringe upon the established, recognized right of the Defendant to be free from legal damages in Title VII actions.").

In adopting an argument similar to the one made by defendants in this case, District Judge Debevoise of New Jersey wrote:

> Retroactive application of the compensatory damages provision of the 1991 Act does not create a new cause of action. It does, however, create a new source of liability under which the Defendant may be responsible for substantial monetary damages. As such, it is substantive rather than procedural in nature. *See Khadnelwal v. Compuadd Corp.,* [780 F.Supp. 1077] at 1080 n. 5 [ (E.D.Va. 1992) ].

*Thomas v. Frank,* 791 F.Supp. at 476.

Judge Debevoise's conclusion is buttressed by the factual scenario of *Bradley.* When the Court discussed the third factor of the manifest injustice test in *Bradley,* it observed:

> Here no increased burden was imposed since ... [the statute providing for attorneys' fees] did not alter the Board's constitutional responsibility for providing pupils with a nondiscriminatory education. *Also, there was no change in the substantive obligation of the parties.* From the outset, upon the filing of the original complaint in 1961, the Board engaged in a conscious course of conduct with the knowledge that, under different theories, discussed by the District Court and the Court of Appeals, the Board could have been required to pay attorneys' fees.

*Id.* 416 U.S. at 721, 94 S.Ct. at 2021 (emphasis added). The linchpin to the Court's holding in *Bradley,* therefore, was that the defendant had some exposure to an award of fees at common law *prior* to the enactment of the statute authorizing them. Unlike *Bradley,* the cases presently before the Court involve situations where the defendants were *not* exposed to compensatory and punitive damage awards prior to the passage of the 1991 Act.

Ultimately, this Court must decide between two forcefully made arguments. On the one hand, it is difficult to accept the proposition that a defendant who knew its actions were illegal at the time it acted can successfully claim "manifest injustice" for the imposition of damages designed to *compensate* plaintiff for wrongs done by defendant. On the other hand, recognition must be given to the realities of today's business world where decisions to downsize are common place. So long as discrimination laws are not violated any employee is fair game for termination. Given the litigious nature of our society, when an employer terminates a large number of em-

ployees it is inevitable that some dissatisfied employees will become plaintiffs in discrimination suits against their employers who with equal conviction feel they did not engage in discriminatory conduct. Because of the potential for lawsuits, decisions to downsize or to terminate employees often include a calculus of exposure to damages from civil suits. For this reason it can be persuasively argued that it is unreasonable to expect defendants to pay damages that were not calculated into their decisions.

At bottom, the Court concludes passage of section 102 of the 1991 Act does not alter a plaintiff's right to be free from discrimination as that right existed prior to the Act's enactment;[11] passage of the Act does, however, impose a new obligation on a defendant to pay compensatory and punitive damages. Accordingly, the Court concludes that to apply the 1991 Act retroactively would impact substantially on defendant's previous rights, but would not impact on plaintiff's continuing right to be free from discrimination. Moreover, retroactive application of the 1991 Act cannot deter discriminatory conduct which occurred *prior* to the passage of the Act. Accordingly, the Court will not apply retroactively the compensatory and punitive damages provisions of section 102.

■ Although the right to a jury trial is procedural in nature, *see Wabol v. Villacrusis,* 958 F.2d 1450, 1460 (9th Cir.1990), and should arguably be applied retroactively, this Court will nonetheless prohibit plaintiffs from demanding a jury trial because the only relief remaining available to plaintiffs is equitable in nature. *Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979) (noting, "[b]ecause ... [Title VII] expressly authorizes only equitable remedies, the courts have consist-

ently held that neither party has a right to a jury trial."); *see Davis v. Therm–O–Disc, Inc.,* 791 F.Supp. 693, 700 (N.D.Ohio 1992) ("The Civil Rights Act of 1991 not only provides for compensatory and punitive damages for Title VII claimants but specifically and logically confines the right to a jury trial to parties seeking such damages.").

### III.

*Kuntz v. Penco,* raises the issue of whether the Court's analysis in Section II of this opinion should differ in cases involving conduct prior to the 1991 Act's enactment but post-enactment filing of suit in federal court. The Court concludes that it should not. Of crucial import is the law at the time the *conduct* occurred compared with the law as written in the 1991 Act; the fortuitous or strategic moment when suit is filed in federal court makes no difference. *See Tyree v. Riley,* 783 F.Supp. at 878 n. 3 (denying retroactivity and, in dicta, stating "the same rationale and holding would apply to cases instituted after the enactment of the 1991 Civil Rights Act based on conduct that occurred prior to its enactment."); *but see Great Am. Tool and Mfg. Co. v. Adolph Coors,* 780 F.Supp. 1354, 1355 (D.Col.1992) (noting "[b]ecause this issue was not pending at the time the Act became law, there is no issue of retroactivity. Nor does it matter that the alleged wrongful conduct here occurred before the enactment of the Act.").

### IV.

■ Finally, *Robertson v. Hercules,* raises two issues: (1) Does a *Price Waterhouse* analysis apply to the facts of this case? (2) If the first question is answered in the affirmative, does section 107 of the 1991 Act modifying *Price Waterhouse* apply to an ADEA case?[12] Because the

---

**11.** Passage of section 102 of the Civil Rights Act of 1991 increased the *remedies* available to plaintiffs.

**12.** *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), held that if an employer could show that it would have made the same decision based on non-discrimi-

natory grounds, the plaintiff would lose his case. Under section 107 of the 1991 Act (which modifies the holding in *Price Waterhouse* ), if a plaintiff shows that one of the prohibited factors motivated an employment action, an unlawful employment practice is established even if other lawful factors also motivated the action. Once an employer shows the same decision

Court has no factual record before it, the Court cannot answer the first issue presented. The Court will not answer the second issue at this procedural juncture because any answer the Court might give would be dicta at best and an advisory opinion at worst.

### V.

For the reasons set forth above, (1) plaintiff's motion to amend the complaint in *Crumley v. Delaware State College,* Nos. 90–429/90–711–MMS will be denied with respect to the addition of claims for compensatory and punitive damages and a jury demand; (2) defendant's motion to strike, or in the alternative to dismiss, plaintiff's claims for compensatory and punitive damages and jury demand in *Kuntz v. Penco Corp.,* No. 92–25–MMS, will be granted;[13] (3) the Court does not address plaintiff's motion for clarification in *Robertson v. Hercules,* No. 91–89–MMS.

An appropriate order will issue.

would have been made irrespective of the discriminatory factor, the question of *remedy* and not violation is at issue.

13. The parties' briefing in *Kuntz* focused only on the retroactivity of compensatory and punitive damage sections of the 1991 Act and the right to a jury trial under the Act. Indeed, in its opening brief defendant only referenced paragraphs 37 (requesting compensatory damages) and 38 (requesting punitive damages) of the Complaint. Therefore, the Court does not address whether plaintiff's demand for expert fees under 1991 Act should be applied retroactively. *See Kuntz* Complaint, Dkt. 1 at ¶ 39.