**Arnie F. BRYANT, Plaintiff,**

v.

**NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION (d/b/a METRA), Defendant.**

**No. 91 C 8364.**

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1992.

---

Mark A. Miller, Debra Bess Walker, Williams & Montgomery, Chicago, IL, for plaintiff.

Arnie F. Bryant, Chicago, IL, pro se.

Sue–Ann Rosen, Joann Caracci Pelka, Raymond M. Coyne, Constance Valkan, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Arnie F. Bryant ("Bryant") filed suit against Northeast Illinois Regional Commuter Railroad Corporation ("METRA") bringing claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the First and Fourteenth Amendments to the United States Constitution. METRA moves to strike certain paragraphs of Count I, and dismiss Counts II, III, and IV, with prejudice. For the reasons set forth below, we grant METRA's motion to strike the paragraphs which allege the applicability of the Civil Rights Act of 1991 and deny the motion as to the remaining counts.

## BACKGROUND

In June 1989, Bryant, a black male, began employment with METRA as a security officer. In November 1989, Bryant was elected chairman of the Minority Transportation Workers of America ("MTWA"), a local organization of minority transportation employees concerned with fairness and equality within the industry.

As part of his responsibilities as the MTWA chairman, Bryant sought to have meetings with James E. Cole, METRA's chairman, and participated in radio interviews, wherein he voiced concerns and grievances of METRA's minority employees pertaining to discriminatory hiring and promotion practices of METRA. Bryant also sent letters to several elected officials in which he questioned METRA's discriminatory hiring and promotion practices. Shortly after Bryant engaged in these activities, his METRA supervisors allegedly began a systematic pattern of harassment of Bryant, including surveillance and contrived disciplinary notices.

Bryant alleges that in September 1990, METRA unjustly accused him of sexually harassing an individual that Bryant found trespassing on METRA property. METRA later accused a similarly-situated, white, male security officer of sexual harassment in February 1991. Whereas the white security officer received a five day suspension, Bryant was terminated from his position with METRA in October 1990.

In Count I, Bryant claims that METRA discharged him in retaliation for his activities as MTWA chairman in violation of Title VII of the Civil Rights Act of 1964. In Count II, Bryant alleges racial discrimination in violation of Title VII of the Civil Rights Act of 1964. In both counts, Bryant seeks various equitable remedies, compensatory damages and trial by jury. Count III is a claim, relating to the retaliatory discharge, under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to .the United States Constitution. Count IV is a claim, relating to the discriminatory discharge,

under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution.

METRA moves to strike Bryant's request for compensatory damages and trial by jury in Counts I and II, arguing that the Civil Rights Act of 1991 is inapplicable to the situation here. METRA also moves to dismiss Counts II, III, and IV. METRA contests that the facts in those counts are insufficient to support a claim for relief.

## DISCUSSION

### A. Retroactivity of the Civil Rights Act of 1991

This case presents us with the unique question of whether the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 ("1991 Act" or "Act"), applies to cases filed after the effective date of the Act (November 21, 1991) that arise from conduct committed before that date. Although the Seventh Circuit has held that the 1991 Act should apply prospectively to all cases filed before the effective date, it has not decided how the Act should apply to cases filed after the effective date.[1] Despite the numerous courts which have ruled on the retroactivity of the 1991 Act, the factual scenario before this Court has been considered by only a few district courts. *See* Daniel V. Kinsella, *The Civil Rights Act and the Retroactivity Muddle*, 80 ILL.B.J. 500, 503 (1992), for a listing of recent district and circuit court rulings on the broader retroactivity issue.

In *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 234 (7th Cir.1992), the court held that "the new act is applicable only to conduct engaged in after the effective date ... in the act, *at least if the suit had been brought before the effective date.*" (emphasis added). In *Banas v. American Airlines*, 969 F.2d 477, 484–85 (1992), the Seventh Circuit reinforced that its previous decisions have left unresolved whether the 1991 Act "should be applied to entirely new proceedings begun after its passage." *See also Mozee v. Am. Com-*

---

1. In this case, METRA's retaliatory and discriminatory acts against Bryant occurred between November 1989 and October 1990, and the original complaint was filed on December 31, 1991.

*mercial Marine Serv. Co.*, 963 F.2d 929, 939–40 (7th Cir.1992). Nevertheless, *Mozee* and *Luddington* provide sufficient instruction to guide us in our determination.

METRA asserts that the decisions in the Seventh Circuit foreclose the possibility that the 1991 Act be applied retroactively in any case where the actions occurred prior to the Act's effective date. Bryant contests that the Seventh Circuit has intentionally left this question open and that a retroactive application of the Act is necessary to preserve his rights.

1. The Civil Rights Act of 1991 and Supreme Court Precedent

Before we can decide this question, it is important to examine the language of the 1991 Act and the relevant rules of construction which the Supreme Court has adopted. This discussion will provide an instructive backdrop for our determination of the issue at hand.

In determining whether the 1991 Act applies retroactively, the "starting point for interpretation of [the Act] 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

Section 402(a) of the 1991 Act provides: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Pub.L. No. 102–166, § 402(a), 105 Stat. 1071. Finding that section 402(a) could be read in any of several ways, the *Mozee* court declared that the "language is hopelessly ambiguous" as to the retroactivity question. 963 F.2d at 933. Furthermore, the court in *Mozee* looked to the legislative history of the 1991 Act and likewise found no clear indication of congressional intent. *Id.* at 934.

In the absence of clear legislative intent from either the 1991 Act's explicit language or its legislative history, an analysis of the Supreme Court's rules of construction is warranted. Unfortunately, this inquiry has produced conflicting results in various courts as well. As Justice Scalia has professed, the rules of construction relating to the retroactivity of recently enacted laws are in "irreconcilable contradiction." *Bonjorno*, 494 U.S. at 841, 110 S.Ct. at 1578 (Scalia, J., concurring).

The confusion stems from the 1969 decision in *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Prior to *Thorpe*, the Court had followed the ancient rule, which Justice Scalia dated back to Greek and Roman Law, that laws are presumed to operate on future transactions and should not be used to punish past conduct. *Bonjorno*, 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring) (citing 2 P. VINOGRADOFF, OUTLINES OF HISTORICAL JURISPRUDENCE 139–40 (1922); Justinian Code, Book 1, Title 14, § 7). However, in *Thorpe*, the Court departed from this established rule and declared that the general rule is that a "court must apply the law in effect at the time it renders its decision." 393 U.S. at 281, 89 S.Ct. at 526. The Court reaffirmed this principle in *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In *Bradley*, the Court added the proviso that a newly enacted statute should not apply retroactively if manifest injustice would result. *Id.*

However, in later decisions, the Supreme Court reverted back to its traditional stance which promotes prospective application of new laws. *See, e.g., United States v. Sec. Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Bennett v. New Jersey*, 470 U.S. 632, 640–41, 105 S.Ct. 1555, 1560–61, 84 L.Ed.2d 572 (1985). In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court emphatically stated: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." But,

the Court left its holdings in *Thorpe* and *Bradley* undisturbed.

Recognizing that a court of appeals may not determine when a Supreme Court decision has been effectively overruled, the Seventh Circuit in *Mozee* attempted to reconcile the *Thorpe–Bradley* and *Bowen* lines of cases. *Mozee*, 963 F.2d at 935–36. The *Mozee* court, persuaded by Justice Scalia's command that the presumption of prospective application is both rooted in history and grounded in notions of fairness, concluded that *Bowen* states the general rule. *Mozee*, 963 F.2d at 935 (citing *Bonjorno*, 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring)). Moreover, the *Thorpe–Bradley* presumption of retroactive application would apply only in that narrow category of cases in which the statute does not impact substantive rights and obligations. *Id.* at 935–36 (citing *Bennett*, 470 U.S. at 639, 105 S.Ct. at 1559).

### 2. Prospective application to suits filed after the effective date of the Act

■ In light of the Seventh Circuit's instruction, we hold that the Civil Rights Act of 1991 will be applied prospectively in cases where the conduct occurred before the Act's enactment and where the lawsuit is filed afterwards. This is consistent with the timeless rule that laws should operate on future transactions and should not be used to punish past conduct.

The key question in this analysis is whether the remedies sought here, compensatory damages and a jury trial, constitute "substantive rights and obligations."[2] In *Mozee*, the court discussed, in dicta, the applicability of the *Bowen* rule to the damage and procedural provisions in the 1991 Act. *Mozee*, 963 F.2d at 939. Suggesting

that courts arguably should apply such provisions in effect at the time of trial, the *Mozee* court shied away from this position because of the likely confusion which would be caused by conducting a provision-by-provision analysis between those parts of the Act that regulate procedure and those that impact substantive rights. *Id.* at 940.

In *Luddington*, 966 F.2d at 229, Judge Posner resolved the uncertainty expressed by the court in *Mozee*. Recognizing that, with one exception, the 1991 Act did not prohibit any conduct already prohibited under Title VII, the court observed that the Act made changes solely in remedies, procedures, and evidence. *Id.* But, the court warned, "such changes can have as profound an impact on behavior outside the courtroom as avowedly substantive changes." *Id.* Noting that employers are subject to greater liabilities under the 1991 Act, the court observed:

> The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Id.* Thus, *Luddington* makes it clear that compensatory damages impact on the substantive rights and obligations of a defendant-employer.[3]

---

**2.** This analysis adopted by the Seventh Circuit is similar to the test developed by other district courts which have addressed the precise issue before this Court. For example, in *Jaekel v. Equifax Marketing Decision Systems, Inc.*, 797 F.Supp. 486, 492 (E.D.Va.1992), the court, following *Bradley*'s "manifest injustice" test, suggested: "[T]he threshold issue is whether a new law affects substantive, vested rights and liabilities, or, put another way, whether it would be manifestly unjust to apply the new law to pre-enactment conduct." In *Crumley v. Delaware*

*State College*, 797 F.Supp. 341, 349 (D.Del.1992), the court, although arriving at the opposite conclusion, used the same analysis as the *Jaekel* court.

**3.** Although Bryant's jury demand does not impact substantive rights and obligations, and would otherwise merit retroactive application, we will deny his jury request in this instance. As the court held in *Crumley v. Delaware State College*, 797 F.Supp. 341, 352 (D.Del.1992), a party loses her jury trial right when the only remaining remedy is equitable in nature.

Applying this interpretation to the facts here, it would be unjust to hold METRA liable for compensatory damages. Although their alleged actions may have been proscribed under prior law, an action for damages was not previously allowed. Further, employers should be permitted to re-adjust their level of care to changes in the law. We therefore hold that prospective application of the Civil Rights Act of 1991 is appropriate in cases filed after the effective date concerning pre-enactment conduct.[4] We therefore grant METRA's motion to strike the paragraphs in Count I and Count II which allege that the Civil Rights Act of 1991 applies to Bryant's situation.

### B. Motion to Dismiss Remaining Counts

■■■ The Court should not dismiss a complaint "unless it appears beyond a doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

METRA contests that Bryant alleged insufficient facts to conclude that he was "unjustly accused" of sexual harassment and provided with an "inappropriate investigation and inadequate hearing." To establish a prima facie case of race discrimination, a plaintiff must demonstrate that "(1) he was a member of a protected class (2) who was qualified for his job (3) but was discharged while those in other classes were not." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1299 (7th Cir.1992) (*citing Andre v. Bendix Corp.*, 841 F.2d 172, 175 (7th

Cir.1988), *cert. denied*, 488 U.S. 855, 109 S.Ct. 144, 102 L.Ed.2d 116 (1988)).

In this case, Bryant has alleged sufficient facts to establish a prima facie case of race discrimination. In Count II, paragraph 1, Bryant states that he is a member of a protected class; he is black. In Count II, paragraph 4, Bryant states his qualifications for the security officer position, specifically citing his previous work experience as a security officer and his security training in the U.S. Army. In Count II, paragraphs 5 and 6, Bryant states that he was discharged for alleged misconduct which was nearly identical to that of a white METRA security officer who was retained. Bryant has sufficiently pled facts to support his discrimination claim. We deny METRA's motion to dismiss Count II.

■■■ The Supreme Court has held that government entities can be held liable under § 1983 for constitutional violations caused by their official policies.[5] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–691, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). Plaintiff must allege sufficient facts that he was injured, and that some municipal policy, custom or practice proximately caused the injury. *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Mere allegations or conclusions are insufficient to plead a § 1983 claim. *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 202 (7th Cir.1985). We are, however, aware that plaintiffs may lack "even the minimum pleading requirements ... until they are allowed discovery and that dismissing such claims prematurely could permit constitu-

---

**4.** This decision is consistent with the majority of district courts which have addressed the retroactivity question of the 1991 Act in cases where the conduct occurred before the enactment but the complaint was filed afterwards. *See Mass v. Martin Marietta Corp.*, 805 F.Supp. 1530, 1538 (D.Colo.1992) (prospective application); *Sloan v. Boeing Co.*, 802 F.Supp. 384, 387 (D.Kan.1992) (same); *Scherzer v. Midwest Cellular Tel. Co.*, 797 F.Supp. 914, 917 (D.Kan.1992) (same); *Crumley v. Delaware State College*, 797 F.Supp. 341, 352 (D.Del.1992) (same). *But see Great American Tool & Mfg. Co. v. Adolph Coors Co., Inc.*, 780 F.Supp. 1354, 1355 (D.Colo.1992) (relying solely on § 402(a) of the 1991 Act, the

court held that the Act governs all actions filed after the date of its enactment); *Jaekel v. Equifax Marketing Decision Systems, Inc.*, 797 F.Supp. 486, 493 (E.D.Va.1992) (finding that the 1991 Act applies retroactively because the Act did not impact substantive rights, but merely lifted an "artificial ceiling" from the recoverable amount).

**5.** METRA is a governmental entity, a public corporation and a unit of local government as defined under the Regional Transportation Authority Act. Ill.Rev.Stat. ch. 111⅔, ¶¶ 702.20 (99, 701.04).

**590**

tional violations to go unremedied." *Means v. City of Chicago,* 535 F.Supp. 455 (N.D.Ill.1982).

In the case at hand, Bryant has pled that he was discharged after engaging in constitutionally protected conduct. He also alleges four other individuals were discharged or sanctioned in keeping with this discriminatory policy. He states the names and circumstances under which they were discriminated. Without further information gained through discovery it is too early to dismiss the § 1983 claims. Although courts have held that one incident of discriminatory conduct may be insufficient to plead a § 1983 claim, the accumulation of a series of incidents may rise to the level of policy. *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985). These incidents, if in fact true, would constitute five separate occasions when METRA may have acted according to a discriminatory policy. This is sufficient to survive a motion to dismiss the § 1983 claims. We deny METRA's motion as to the § 1983 claims.

■ We further find that Bryant has sufficiently pled facts that support his first amendment speech claim. Bryant was speaking out on a matter of public concern—the discriminatory practices at METRA; and METRA allegedly discharged him because of that speech. *See Barkoo v. Melby,* 901 F.2d 613, 617 (7th Cir.1990). Bryant alleges that shortly after he engaged in the speech against METRA he was subjected to adverse personnel actions.

This is precisely the kind of conduct which Title VII was designed to eradicate. If, in fact, it is true that METRA fabricated disciplinary notices and engaged in a pattern of harassment which included these notices and surveillance, it will become evident during the discovery phase of this litigation. It is sufficient at this stage, that Bryant has pled that these practices have occurred. We cannot say, beyond a doubt, that Bryant can prove no set of facts in support of his claim which would entitle him to relief. For these reasons, we deny Metra's motion to dismiss the First Amendment and due process claims.

For the foregoing reasons, we grant METRA's motion to strike paragraphs in Count I and II of the Complaint which allege claims under the Civil Rights Act of 1991, we deny METRA's motion to dismiss Counts II, III, IV.