Jacob A. MASS, Plaintiff,

v.

MARTIN MARIETTA CORPORATION, a Maryland corporation, Defendant.

Civ. A. No. 90 N 1786.

United States District Court, D. Colorado.

Oct. 27, 1992.

Benjamin Sachs, Law Office of Kathleen Mullen, P.C., Denver, Colo., for plaintiff.

John R. Webb and Edwin P. Aro, Holme Roberts & Owen, Karen M. Barry, Associate Gen. Counsel, Legal Dept., Martin Marietta Corp., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Plaintiff Jacob Mass is a black man who is physically handicapped with insulin-dependent diabetes mellitus. Plaintiff worked for Defendant Martin Marietta Corporation at its Waterton Plant in Colorado from February 1987 until he was discharged in June 1989. Plaintiff alleges that he was racially harassed at work. After he reported the racial harassment, he says, defendant retaliated by placing him on an unfair performance improvement plan and eventually discharging him on the pretext that his performance was subpar. Plaintiff also claims that he was refused overtime work and discharged because of

his race and handicap. His complaint asserts four claims for relief: (1) a title VII claim for racial discrimination, racial harassment, and retaliation; (2) a claim under 42 U.S.C.A. § 1981 (West 1981) for discriminatory discharge; (3) a Rehabilitation Act claim alleging discrimination on account of his handicap; and (4) a state law claim for outrageous conduct. Jurisdiction is based on 28 U.S.C.A. §§ 1331, 1343, 1367 (West Supp.1992) (federal question, civil rights, supplemental jurisdiction).

The matter is now before the court on four separate motions filed by defendant. These motions raise the following issues: (1) whether the Civil Rights Act of 1991 should be applied retroactively to a complaint first filed prior to the Act and thereafter amended to assert rights and remedies available under the Act; (2) whether plaintiff is entitled to a jury and punitive damages as part of his title VII claim; (3) whether plaintiff is entitled to maintain a section 1981 claim for discriminatory discharge; (4) whether plaintiff's retaliation claim is reasonably related to the allegations of racial discrimination and harassment contained in the administrative charges he filed with the Colorado Civil Rights Commission [hereinafter "CCRC"]; (5) whether plaintiff has met his burden of producing evidence that defendant receives federal financial assistance—an essential element of plaintiff's Rehabilitation Act claim; and (6) whether a reasonable jury could conclude that defendant's conduct was outrageous. I conclude as follows: (1) the Civil Rights Act of 1991 does not apply retroactively; (2) plaintiff is not entitled to a jury or punitive damages as part of his title VII claim; (3) section 1981 does not permit a claim for discriminatory discharge; (4) plaintiff's retaliation claim is not reasonably related to plaintiff's discrimination and harassment claims; (5) plaintiff has failed to produce evidence from which a reasonable jury could conclude that defendant receives federal financial assistance; and (6) there is a genuine issue of material fact as to whether defendant's conduct was outrageous.

## FACTS

In February 1987, plaintiff was employed as a radiographic inspector at defendant's Waterton Plant in Colorado, which manufactures space vehicles and is part of defendant's Astronautics Group. In late fall 1988, plaintiff took time off from work to receive medical care related to his diabetes. On January 16, 1989, plaintiff was cleared by his doctor to work overtime. Plaintiff alleges that, between January and June 1989, he was refused overtime work because of his handicap and race.

Between September 1988 and March 1989, according to plaintiff, he was subjected to racial harassment. Plaintiff claims that defendant's employees made several racial remarks, including calling him a "dumb fucking nigger." Plaintiff maintains that several racially derogatory jokes were photocopied and left on his desk. Plaintiff alleges that, despite his complaints about the racial comments and jokes, defendant took no action. Defendant responds by asserting that it investigated the incidents of racial harassment and found plaintiff's complaints to be unfounded.

In early 1989, defendant evaluated plaintiff's performance and gave him a marginal rating. Plaintiff claims this was done in retaliation for his complaints about racial harassment and because he is black. Defendant responds that plaintiff received a low rating because of his poor work performance, excessive absenteeism, and excessive phone use. Plaintiff was placed on a performance improvement plan (PIP) for 90 days for the purpose of giving him an opportunity to improve his rating. Plaintiff claims that the PIP was discriminatory and unreasonably harsh. According to defendant, plaintiff's work did not improve under the PIP and plaintiff was told in June that he had one week to improve his work substantially. Because plaintiff's work did not improve, defendant terminated plaintiff's employment effective June 23, 1989.

Plaintiff thereafter filed a charge with the CCRC, which investigated the matter and forwarded its findings to the Equal

Employment Opportunity Commission [hereinafter "EEOC"]. In July 1990, the EEOC notified plaintiff of his right to sue. Plaintiff filed his complaint in this case on October 5, 1990. On January 20, 1992, with leave of court, plaintiff filed an amended complaint, alleging the same four claims, but asserting entitlement to the newly-enacted rights and remedies available under the Civil Rights Act of 1991.

## ANALYSIS

### I. RETROACTIVITY OF THE CIVIL RIGHTS ACT OF 1991

Defendant moves to dismiss plaintiff's amended complaint "insofar as it relies on the application of the Civil Rights Act of 1991." *Defendant's Motion to Dismiss Amended Complaint* (filed Feb. 10, 1992). In response, plaintiff urges that the Civil Rights Act of 1991 should be applied retroactively to his claims. All of the allegedly discriminatory conduct described in both the complaint and the amended complaint occurred before November 21, 1991, the date on which President Bush signed the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991) [hereinafter "the Act"].

The Act makes several important changes to section 1981 and title VII. Section 101(b) of the Act expands the scope of section 1981 to include essentially all forms of racial discrimination in the making, performance, enforcement, and termination of contracts, overturning the limitations judicially imposed on section 1981 by *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Act also expands liabilities and remedies available under title VII. Under the law existing before passage of the Act, title VII authorized only equitable remedies, including backpay and reinstatement. *Jackson v. Pool Mortgage Co.*, 868 F.2d 1178, 1181 n. 4 (10th Cir.1989); 42 U.S.C.A. § 2000e–5(g) (West 1981). A plaintiff was not entitled to demand a jury trial under title VII, *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir.1991), or to recover compensatory or punitive damages, *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1443 (10th Cir.1988). Before the Act was signed, neither section 1981 nor title VII permitted an award of expert witness fees to the prevailing party. *West Virginia Univ. Hosps., Inc. v. Casey*, ⸺ U.S. ⸺, 111 S.Ct. 1138, 1139, 113 L.Ed.2d 68 (1991). Now, under section 102 of the Act, a plaintiff can request a jury trial and, within certain specified limitations, recover compensatory and punitive damages from an employer. Section 113 allows an award of expert witness fees in both title VII and section 1981 actions. Plaintiff's amended complaint seeks to take advantage of all these changes.

 In determining whether the Act applies retroactively, I must look initially to congressional intent. *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1392 (10th Cir.1990), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). Congressional intent is determined primarily from the "plain" language of the Act and, secondarily, from the Act's legislative history. *See id.* at 1385–88. I will first consider the language of the Act.

### A. *Language of the 1991 Act*

Section 402 is the Act's general provision defining its "effective date." Section 402(a) states: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Section 402(a) itself is of no real assistance in divining congressional intent because it does not indicate whether the Act, once it *takes* effect, should *have* an effect on pending cases which involve strictly pre-Act conduct. *McLaughlin v. New York*, 784 F.Supp. 961, 968 (S.D.N.Y.1992). It likewise does not say whether the "effect" of the Act is to be an effect on subsequent cases or an effect on subsequent conduct. Section 402(a) is ambiguous by omission.

Other provisions of the Act shed little light on the issues left unresolved by section 402(a). Section 402(b) exempts from the Act certain disparate impact cases and was intended to prevent application of the Act to specific litigation involving the Wards Cove Packing Company. One other

section of the Act specifies when that section is to *have* effect. Section 109(c) (dealing with employment in a foreign country) expressly indicates that the amendments made by section 109 "shall not apply with respect to conduct occurring before" the Act's effective date.

One might argue that, because sections 402(b) and 109(c) were expressly made prospective, the negative implication of these two sections is that the remaining sections of the Act should be applied retroactively. *E.g., Davis v. City & County of San Francisco*, 976 F.2d 1536, 1550 (9th Cir.1992). Relying on the canon of statutory construction according to which a statute is construed so as to avoid rendering one part inoperative or redundant, the *Davis* court noted that sections 402(a) and 109(b) would be redundant if other sections of the Act were generally held to be prospective in operation. Consequently, the court decided that other sections of the Act should apply to all "prior conduct not barred by the applicable statutes of limitations." *Id.* at 1551.

While this argument has some allure, I decline to adopt it for two reasons. First, it relies exclusively upon a single technique for discerning congressional intent—a rule of statutory construction—and ignores considerable evidence that Congress recognized the potential redundancy of sections 402(b) and 109(c) and yet deliberately chose to muddle remaining retroactivity issues, leaving its clouded handiwork to the courts for resolution. Various legislators disagreed, for example, about what implication, if any, could be drawn from section 402(b). *Compare* 137 Cong.Rec. S15,966 (daily ed. Nov. 5, 1991) (statement of Sen. Durenberger) ("Some may attempt to argue at a later date that [section 402(b)] creates an inference that the bill, in general, is retroactive.... That is the wrong conclusion to draw....") *and id.* at S15,953 (technical correction submitted by Sen. Dole) ("Absolutely no inference is intended or should be drawn from the language of this amendment to section 402 that the provisions of the Act or the amendments it makes may otherwise apply retroactively to conduct occurring before the date of enactment of this Act.") *with id.* at S15,963 (statement of Sen. Kennedy) ("adoption of [section 402(b)] makes it more likely that the restorations in the act will apply to all cases except the Wards Cove case itself"). In light of these disparate statements, I doubt that the existence of sections 109(c) and 402(b) demonstrates the intent of Congress that the Act's other provisions should apply retroactively. I find it more plausible to believe that, while Congress was able to muster agreement concerning the specific "prospective only" provisions reflected in sections 402(b) and 109(c), it was simply unable to agree on the application of other parts of the Act. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1377 (8th Cir. 1992); *West v. Pelican Management Servs. Corp.*, 782 F.Supp. 1132, 1136 (M.D.La.1992) (specific prospective sections 109[c] and 402[b] do not compel conclusion that remaining provisions should be applied retroactively; Congress was just "securing 'additional assurances' against retroactive effect").

There is a second argument cautioning against the conclusion that sections 402(b) and 109(c), by negative implication, demonstrate the retroactivity of the Act's other provisions. When Congress is really able to muster a majority view concerning retroactivity, it does not leave the matter to negative implication. Congress certainly knows how to express its intent that a statute be applied retroactively. *See, e.g.*, The Black Lung Benefits Act, 30 U.S.C.A. § 945(a)(1) and (c) (West 1986) (applies to claims "pending on" or "denied on or before" the effective date of the act); The Federal Home Loan Act, 12 U.S.C.A. § 1439a (West Supp.1992) (funds deposited pursuant to the statute shall be available "retroactively as well as prospectively...."), cited in *Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417, 422 (E.D.N.Y. 1992). Just a year earlier, section 15(a)(4) of the proposed Civil Rights Act of 1990 unambiguously provided that the section permitting jury trials, compensatory and punitive damages "shall apply to all proceedings pending on or commenced after the date of the enactment of this Act." *Id.*

at 422. The 1991 Act contains none of this clear direction. Examining the language of the Act does not resolve the question of whether it should be applied retroactively. I must therefore examine the Act's legislative history.

## B. Legislative History of the Act

A review of the legislative history reveals that "Congress was anything but clear on whether the Act would apply to pending cases." *Hansel v. Public Serv. Co. of Colo.*, 778 F.Supp. 1126, 1136 (D.Colo.1991). Supporters and sponsors of the Act strongly disagreed on the issue of retroactivity, although they were in final agreement that the Act should not be applied retroactively to foreign employment (section 109[c]) or to the extended litigation in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (section 402[b]). *See* Legislative History, 137 Cong.Rec. S15950–15968 (Nov. 5, 1991). *See also Hansel*, 778 F.Supp. at 1136–37; *Petra Cablevision*, 793 F.Supp. at 422–25 (thoroughly discussing the Act's legislative history).

In 1990, President Bush vetoed a precursor of the Act, the Civil Rights Act of 1990, in part because of the 1990 act's specific retroactivity provision. *Petra Cablevision*, 793 F.Supp. at 422. Congress was unable to override the veto. The next year's attempt to draft an acceptable version of the Act contained a provision specifying prospective only application. This provision was deleted by the House. *Id.* at 422 n. 8, citing 137 Cong.Rec. H3834–02, § 14 (daily ed. June 4, 1991). From this legislative history, "one could conclude that the [Act] was left purposefully vague in an attempt to secure passage." *Joyner v. Monier Roof Tile, Inc.*, 784 F.Supp. 872, 877 (S.D.Fla.1992).

It is, however, not necessary to merely suppose this fact. Congress could not marshal a majority on either view on the application of the Act. To garner sufficient votes for passage, Congress simply decided not to decide. Legislators admittedly abandoned to the courts the onerous job of determining how the Act should be applied.

Senator Kennedy declared, "It will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." 137 Cong.Rec. S15,485 (daily ed. Oct. 30, 1991). Senator Danforth and others made similar announcements. *See id.* at S15,483. Instead of determining the proper application of the Act, legislators debated and disagreed on how *case law* would affect the subsequent application of an act deliberately left vague. *Petra Cablevision*, 793 F.Supp. at 424. *See Fray*, 960 F.2d at 1380 ("Congress deliberately left the Act retroactivity-neutral, reserving the issue for the courts to decide.") (Heaney, J., dissenting); *McLaughlin*, 784 F.Supp. at 969 ("Congress was purposefully ambiguous" on retroactivity). There is thus no congressional "intent" on retroactivity that can be discovered either through analysis of the Act's language or its legislative history. I therefore turn to the case law concerning statutory retroactivity. *See DeVargas*, 911 F.2d at 1388.

## C. Judicial Presumptions Concerning Retroactivity

The case law concerning retroactivity reflects a tension between two decisions of the Supreme Court, *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). *Bradley* stands for the rule that, absent congressional intent to the contrary, a new statute is to be applied retroactively, unless "manifest injustice" will result. *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016. In apparent conflict is *Bowen*, which is supported by a long line of cases for its holding that "retroactivity is not favored in the law.... [New statutes] will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471.

▪ Not surprisingly, this conflict has split the circuits. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). The majority of the

Supreme Court declined to reconcile this conflict in *Kaiser Aluminum*. The *Bradley–Bowen* conflict has been identified and endlessly analyzed by nearly all courts which have struggled to resolve issues concerning the Act's retroactivity. I need not rehash the debate here. The Tenth Circuit has determined that *Bowen* is the better rule. *DeVargas*, 911 F.2d at 1390. Accordingly, I apply the presumption that an act of Congress has no retroactive effect "unless a contrary intent appears." *DeVargas*, 911 F.2d at 1392, citing *Kaiser Aluminum*, 110 S.Ct. at 1588 (Scalia, J., concurring); *Bowen*, 488 U.S. at 209, 109 S.Ct. at 471. Having found no clear congressional intent that the Act applies retroactively, I presume, under *DeVargas*, that the Act is to be applied only prospectively.

### D. Meaning of the Term "Retroactive"

To say that the Act applies only prospectively does not fully answer the questions presented by this case, because it is not entirely clear what the words "retroactive" and "prospective" mean. Does the Act apply (1) to pending cases filed before the effective date of the Act which are based entirely on conduct that occurred before the effective date? (2) To pending cases filed before the effective date which are based entirely on conduct that occurred before the effective date, where plaintiff seeks to file an amended complaint after the effective date? (3) To cases filed after the effective date of the Act which are based entirely on conduct that occurred before the effective date? (4) To cases filed after the effective date of the Act which are based on a course of conduct that straddles the effective date? If one looks to the time of the conduct to determine whether the Act is to be applied retroactively, then application of the Act in each of these four situations would involve some degree of retroactivity. If one looks solely to the date on which the action was filed, then only the first and second situations involve retroactive application of the Act.

■ Because application of the Act in the first situation would entail retroactivity under either the "time of conduct" analysis

or the "time of filing" analysis, I have followed other decisions in this district and concluded that the *DeVargas* presumption prohibits application of the Act in this situation. *Gray v. City & County of Denver*, Civil Action No. 91–N–1479, Order and Memorandum of Decision (D.Colo. Mar. 24, 1992). Accord, e.g., *Hansel v. Public Serv. Co. of Colo.*, 778 F.Supp. 1126 (D.Colo. 1991) (Babcock, J.); *Golightly–Howell v. Oil, Chemical and Atomic Workers Int'l Union*, 788 F.Supp. 1158 (D.Colo.1992) (Carrigan, J.); *Guillory–Wuerz v. Brady*, 785 F.Supp. 889 (D.Colo.1992) (Arraj, J.). A number of circuit courts have come to the same conclusion. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir. 1992); *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929 (7th Cir. 1992); *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992); *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992). Contra, *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1550.

■ Several judges in this district have also addressed the second situation—where plaintiff, having filed the original complaint before the Act's effective date, seeks to file an *amended* complaint asserting rights made available by the Act. In each of these decisions, the court denied plaintiff's request to file an amended complaint to assert new claims under the Act. *See Burchfield v. Derwinski*, 782 F.Supp. 532 (D.Colo.1992) (Finesilver, C.J.); *Vickerman v. International Business Machines Corp.*, Civil Action No. 91–Z–225, Order (D.Colo. Oct. 22, 1992) (Weinshienk, J.); *Vaughan v. U S WEST Communications, Inc.*, Civil Action No. 90–S–2238, Order (D.Colo. Feb. 5, 1992) (Sparr, J.); *Fief v. Zellerbach Paper Co.*, Civil Action No. 90–M–1799, Memorandum Opinion and Order (D.Colo. Jan. 31, 1992) (Matsch, J.). Reasoning that both the conduct and the filing of the *original* complaint occurred before the effective date, these decisions make no distinction between the first and second situations.

This near-uniformity dissipates when courts confront the question of whether to apply the Act in the third situation—where

the conduct occurs before the effective date of the Act but filing occurs after. A paradigmatic case is Judge Babcock's decision in *Great American Tool & Mfg. Co. v. Adolph Coors Co., Inc.*, 780 F.Supp. 1354 (D.Colo.1992). Having held in *Hansel*, 778 F.Supp. at 1136–37, that the Act would not be applied to a case *pending* on the effective date, Judge Babcock held in *Great American Tool* that the Act would be applied to a case *filed* four days after the effective date. *Great American Tool*, 780 F.Supp. at 1355. *Hansel* and *DeVargas* were both distinguished on the ground that each decision "addressed only whether a new statute would apply to a pending action." *Id. Accord, Herrera v. Humana of Aurora, Inc.*, Civil Action No. 92–S–14, Order (D.Colo. June 11, 1992) (Sparr, J.) (retroactive application of the Act allowed where conduct occurred pre-enactment but filing occurred after effective date).

Using a "time of conduct" analysis, Judge Matsch reached the contrary conclusion in *Moore v. Hughes Aircraft Co., Inc.*, Civil Action No. 92–M–1264, Memorandum Opinion and Order (Aug. 5, 1992). *Accord, Scherzer v. Midwest Cellular Tel. Co.*, 797 F.Supp. 914 (D.Kan.1992); *Crumley v. Delaware State College*, 797 F.Supp. 341 (D.Del.1992). In holding that the Act should not be "applied retroactively to conduct occurring before its enactment," Judge Matsch relied on the appellate decisions in *Vogel*, *Fray*, and *Uncle Ben's*. He also observed that this result is consistent with the position of the EEOC, the administrative agency charged with administering the statute. *But see Davis v. City & County of San Francisco*, 976 F.2d 1536, 1550 (outlining Ninth Circuit's reasons for not deferring to the EEOC).

■ A review of the authorities suggests that the "time of conduct" analysis, not the "time of filing" analysis, is consistent with the philosophy behind the rule that statutes are to be treated as prospective in operation. That philosophy is not always clearly-stated. Justice Scalia has suggested that the rule reflects a "realistic assessment of legislative intent" when the legislature has been silent and that it has

"timeless and universal human appeal." *Kaiser Aluminum*, 110 S.Ct. at 1586 (Scalia, J., concurring) (citing extensively to Greek, Roman, English, and American authorities). This means, I assume, that the rule is rooted in a basic notion concerning fairness and justice: there is something unjust about enacting a new rule of law and then applying that rule to punish (or, civilly, impose liability for) past conduct which was legal before the law was passed. *See id.* at 1587; *Mozee*, 963 F.2d at 935–36. A crucial aspect of this notion is that a person who engages in such conduct is also entitled to know the scope of punishment or liability which the law imposes upon this conduct. Before a person is subject to punishment or liability, he should have a reasonable chance to consider what the law requires (if he cares to inform himself) and to know the extent of punishment or liability imposed for this conduct. In criminal cases this notion of justice is embodied in the Ex Post Facto Clause; in civil cases it is reflected in the less sacrosanct presumption against retroactivity.

If this is a reasonably accurate distillation of the philosophy supporting the rule that statutes should operate prospectively only, then the "time of conduct" analysis is the one which furthers that philosophy. The first, second, and third situations described at the beginning of this discussion—where all of the conduct at issue occurs before the effective date of the Act—call for application of the rule. Although I need not decide the question in this case, the fourth situation—where a course of conduct spans the effective date—may also call for application of the rule, since such a result gives the parties the chance to conform their conduct to the Act and avoids the administrative nightmare of trying the same case under two sets of laws. All of this should be true whether the suit is filed before or after the effective date (or whether, as here, plaintiff seeks to amend a complaint in a pending lawsuit). Application of the Act should not depend on "the fortuitous or strategic moment when suit is filed in federal court." *Crumley*, 797 F.Supp. 341, 352. The time

of filing, or the time of amendment to a previous filing, should be irrelevant.

## E. The Distinction Between Substantive and Procedural Provisions

■ I cannot conclude my analysis of the retroactivity question without discussing another rule of statutory analysis mentioned in *DeVargas* and relied on by some courts when dealing with the Act's retroactivity. In deciding that *Bowen's* presumption against retroactivity, rather than *Bradley's* contrary presumption, should apply in the Tenth Circuit, the *DeVargas* court drew support from another "venerable rule of statutory interpretation, *i.e.*, that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *DeVargas*, 911 F.2d at 1393, quoting *Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) [hereinafter the "substantive-prospective" rule]. Relying on the substantive-prospective rule, Judge Babcock has held that the provisions of the Act which resurrect section 1981 claims buried by *Patterson* and which permit compensatory and punitive damages are "substantive" provisions which do not apply to a case where the conduct at issue occurred before the Act's effective date. *Smith v. Colorado Interstate Gas Co.*, 794 F.Supp. 1035, 1038–39 (D.Colo.1992). Judge Babcock concludes, however, that the section of the Act authorizing an award of expert fees is procedural and can thus be applied retroactively to such conduct. *Id.* at 1039.

I decline to plunge into the quicksand of a substantive-prospective analysis for several reasons. First and foremost, such an analysis will undoubtedly produce prolonged disputation, confusion, and uncertainty as the lower federal courts undertake a section-by-section analysis of the Act to determine whether a particular provision is "substantive" or "procedural." To confirm this expectation, one need only look at the provisions that Judge Babcock reviewed in *Colorado Interstate Gas.* Some courts have agreed with his conclusion that the section authorizing compensatory and punitive damages is substantive. *See Scherzer v. Midwest Cellular Tel. Co.*, 797

F.Supp. 914, 917 ("section 102 of the Act, by exposing a defendant to compensatory and punitive damages, substantially impacts the rights of a defendant as they existed prior to enactment of the Act"); *Crumley*, 797 F.Supp. 341, 352. Other courts, for reasons which seem equally plausible, have concluded that the section permitting compensatory and punitive damages is procedural: it expands the remedies available, but it does not change the basic definition or nature of the proscribed conduct. *See Jaekel v. Equifax Mktg. Decisions Sys., Inc.*, 797 F.Supp. 486, 490–92 (E.D.Va.1992). A similar division is also developing concerning the section of the Act authorizing jury trials. *Compare id.* (permitting a jury trial) *and King v. Shelby Medical Ctr.*, 779 F.Supp. 157 (N.D.Ala. 1991) ("trial by jury or trial by court is purely and simply a 'procedural' question") *with Van Meter v. Barr*, 778 F.Supp. 83, 84 (D.D.C.1991) ("A right to seek compensatory damages in a jury trial against the United States is a major substantive provision").

■ A second reason for avoiding the substance/procedure quagmire is that the philosophy behind the presumption in favor of prospective operation of a statute quickly fades from sight as courts advance equally-plausible reasons for their characterization of a particular provision as "substantive" or "procedural." Assuming that philosophy to be a sound one, then it is best served by applying the *Bowen* presumption without any substance/procedure gloss. True, the underlying legality of the conduct has not changed: intentional discrimination was illegal both before and after passage of the Act. *See Jaekel*, 797 F.Supp. 486, 490 (pointing out that the Act, while expanding remedies, did not illegalize conduct which was previously legal). That, however, does not end the analysis. An analogy may be made to criminal law, where the same philosophy is reflected in the Ex Post Facto Clause: the law may impose a legal norm by illegalizing the possession of drugs. Changing the penalty for simple possession to mandatory life imprisonment would not change that underlying legal

norm, but there is no doubt that applying the new penalty to conduct occurring before the change would violate the Ex Post Facto Clause. The point, for both civil and criminal cases, is that a person may properly evaluate his conduct according to consequences which the law imposes on that conduct. If the law changes those consequences, by way of imposing compensatory damages, punitive damages, or increased litigation costs (expert witness fees, for example), a person ought to have the chance to re-evaluate and change his conduct before the consequences are visited upon him. The changes found in the Act, taken together, enlarge liability for violating the Act. Applying the Act prospectively and denying plaintiff's request for compensatory damages, punitive damages, and expert witness fees avoids a result which is contrary to the basic notion of fairness and justice underlying the rule that legislation should be presumed to operate prospectively.

By applying the Act prospectively to exclude plaintiff's request for compensatory and punitive damages, I necessarily limit plaintiff's recovery to the type of equitable relief which was available before the Act. As a consequence, plaintiff is not entitled to a jury trial. *See Crumley,* 797 F.Supp. 341, 351, 1992 WL 142243 at *10 (plaintiff not entitled to jury because striking the compensatory and punitive damages claim left plaintiff with only equitable remedies); *Scherzer,* 797 F.Supp. 914, 917 (same). I therefore deny plaintiff's request for a jury trial under the Act.

Finally, while I agree with Judge Babcock that the Tenth Circuit's footnoted discussion in *Arnold v. Maynard,* 942 F.2d 761, 762 n. 2 (10th Cir.1991), supports Judge Babcock's retroactive application of a provision found to be "procedural," *Smith v. Colorado Interstate Gas Co.,* 794 F.Supp. at 1038, I do not think *Arnold* compels that result. In *Arnold,* the court considered the retroactivity of a recent amendment to a venue statute. Although the court ultimately decided it did not have to reach the issue, it also noted, in *dicta,* that statutes affecting jurisdiction and procedure apply to pending actions. Especially since the discussion was *dicta,* I do not read *Arnold* as requiring me to engage in a separate substantive-prospective analysis in addition to, or after, applying the *Bowen* presumption.

Under the law existing prior to passage of the Civil Rights Act of 1991, plaintiff's amended complaint does not state any additional claims for relief. Plaintiff is also not entitled to any additional remedies available under the Act. Because the claims and remedies asserted in plaintiff's amended complaint all assume retroactive application of the Act, I strike plaintiff's amended complaint. *See* Fed.R.Civ.P. 12(f). The litigation will proceed on the original complaint, and I will analyze the remaining issues as they relate to each of plaintiff's four claims for relief, applying law existing prior to the Act.

## II. PLAINTIFF'S TITLE VII CLAIM

█ Defendant moves to strike the jury demand for this claim. Plaintiff admits that there is no right to a jury trial for claims brought solely under title VII. *Plaintiff's Response to Defendant's Motion to Strike and for Partial Dismissal* at 32 (filed Dec. 27, 1990); *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1443 (10th Cir.1988). Plaintiff argues that when litigation involves both title VII and section 1981 claims, a jury is allowed to decide the factual issues common to both claims. Since I later conclude that there is no claim under section 1981, I reject this argument. The jury demand is stricken from plaintiff's title VII claim.

█ Defendant moves to strike punitive damages for this claim. Punitive damages are not permitted under title VII. *Pearson v. Western Elec. Co.,* 542 F.2d 1150, 1152 (10th Cir.1976); *Sanchez v. Philip Morris Inc.,* 774 F.Supp. 626, 630 (W.D.Okla.1991). Plaintiff's arguments are contrary to controlling precedent. Plaintiff's claim for punitive damages under title VII is therefore stricken.

█ Defendant moves for partial summary judgment on the grounds that plaintiff is precluded from arguing retaliation as

a basis for his title VII claim. Before bringing a judicial claim, plaintiff must exhaust his administrative remedies by filing his claims with the EEOC or state agency. 42 U.S.C.A. § 2000e–5(b) and (c) (West 1981). Although plaintiff filed a charge with the state agency (CCRC), defendant claims that plaintiff's charge did not contain the claim for retaliation which appears in plaintiff's complaint. *See Brief in Support of Defendant's Motion for Partial Summary Judgment*, ex. D (filed July 9, 1991) (copy of the charge filed with the CCRC [hereinafter "the charge"]). Plaintiff's complaint alleges that he complained to his supervisor about the racial harassment and that he was placed on a performance improvement plan "in retaliation for his making complaints." *Complaint* ¶¶ 20, 23. In the charge, plaintiff simply complains he was "subjected to racial comments which management was aware of but did nothing to stop." *Brief in Support of Defendant's Motion for Partial Summary Judgment*, ex. D. A retaliation claim is based on two facts: that plaintiff reported the illegal conduct and that defendant retaliated. Neither fact is even arguably alleged in plaintiff's charge. The charge only states claims for racial harassment, discrimination because of race, and discrimination because of plaintiff's handicap.

Of course, plaintiff is entitled to bring his claim for retaliation if it is found to be "reasonably related" to the discrimination and harassment claims contained in the charge. *See Brown v. Hartshorne Pub. School Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988) (quoting *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 [9th Cir.1973]). In testing whether a claim is reasonably related to the charge, the court looks at the investigation that can reasonably be expected to grow out of the underlying charge. *Brown*, 864 F.2d at 682. Plaintiff argues that the CCRC investigation did in fact uncover evidence of this retaliation. *Plaintiff's Response to Defendant's Motion for Partial Summary Judgment* at 9–10 (filed July 30, 1991). I disagree. The notice issued by the CCRC after its investigation includes a statement from a witness that supervisors "go after anyone who has crossed them or is disliked." *Complaint*, ex. B ¶ 9. This statement, however, does not demonstrate the CCRC's discovery of evidence that plaintiff had in fact complained, and therefore, had in fact "crossed" management. Although an investigation of charges based on racial discrimination and harassment *might* include an investigation of any claims based on retaliation, such an investigation cannot *reasonably be expected* to include an investigation of retaliation claims.

There is a recognized distinction between claims based on retaliation and claims based on discrimination. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989) ("retaliation and discrimination are separate wrongs"); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir.1988). Courts have held that a retaliation claim is reasonably related to the original charge when the retaliatory acts occur *after* the charge is filed. For example, a claim that defendant retaliated after plaintiff filed the EEOC charge would be regarded as reasonably related to the charge itself. *Brown*, 864 F.2d at 682; *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992). Such a rule makes sense: plaintiff could not have included the retaliation claim in the original charge, since the retaliatory acts had not yet occurred. This rationale does not apply when the retaliatory acts occurred *before* the charge was filed. Several courts have concluded that a retaliation claim is not reasonably related to a discrimination claim when the allegedly-retaliatory acts occurred prior to filing the charge. *See Steffen*, 859 F.2d at 545; *Jensen v. Board of County Comm'rs*, 636 F.Supp. 293, 300 (D.Kan.1986); *Tucker v. Harley Davidson Motor Co.*, 454 F.Supp. 738, 742 (E.D.Wis.1978). I agree. I therefore conclude that plaintiff's retaliation claim is not reasonably related to the claims contained in the charge. Plaintiff has failed to exhaust his administrative remedies with respect to his retaliation claim, and defendant is entitled to sum-

mary judgment on plaintiff's title VII retaliation claim.

### III. PLAINTIFF'S SECTION 1981 CLAIM

■ Both parties agree that claims for racial harassment or for discrimination based on a handicap are not actionable under section 1981. *See Plaintiff's Response to Defendant's Motion to Strike and for Partial Dismissal* at 6–7 (filed Dec. 27, 1990). Plaintiff nonetheless contends that discriminatory termination is actionable under section 1981. Recent controlling authority is to the contrary. In *Trujillo v. Grand Junction Regional Ctr.,* 928 F.2d 973, 976 (10th Cir.1991), the Tenth Circuit held that section 1981 does not permit a claim for discriminatory discharge. *See also Patrick v. Miller,* 953 F.2d 1240, 1251 (10th Cir.1992). The *Trujillo* decision is based on the Supreme Court decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which is the applicable law prior to the Civil Rights Act of 1991. *See Trujillo,* 928 F.2d at 975–76. Plaintiff's second claim for relief is therefore dismissed.

### IV. PLAINTIFF'S REHABILITATION ACT CLAIM

■ Plaintiff's third claim for relief asserts violations of section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp.1992). Section 504 prohibits corporations that receive federal financial assistance from discriminating against individuals on the basis of a physical handicap. According to defendant, plaintiff has not shown that defendant receives federal assistance. "[A]n entity receives financial assistance when it receives a subsidy." *DeVargas,* 911 F.2d at 1382. If the government intends only to compensate defendant for goods and services received, then there is no subsidy, even if the compensation exceeds fair market value. *Id.*

Plaintiff has produced evidence that defendant received "hundreds of millions of dollars" in federal funds pursuant to contracts with various government agencies. *Plaintiff's Response to Defendant's Supplemental Motion for Partial Summary Judgment* at 4, ex. A (filed Nov. 14, 1991)

[hereinafter *Plaintiff's Response* ]. Plaintiff has also produced evidence that defendant used government equipment in manufacturing goods furnished to the government under those contracts. *Plaintiff's Response,* ex. B. This evidence, plaintiff argues, supports the conclusion that defendant receives federal financial assistance. Plaintiff relies on cases involving hospitals that receive Medicare and Medicaid payments from the government. *Bowen v. American Hosp. Ass'n,* 476 U.S. 610, 624 n. 9, 106 S.Ct. 2101, 2111 n. 9, 90 L.Ed.2d 584 (1986) (expressly declining to review the Court of Appeals' assumption that receipt of Medicare or Medicaid payments constituted federal financial assistance); *United States v. Baylor Univ. Medical Ctr.,* 736 F.2d 1039, 1044–49 (5th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985) (concluding that receipt of Medicare or Medicaid payments constituted federal financial assistance). These cases can be distinguished on their facts. When the government provides Medicare or Medicaid payments to a hospital, it receives no goods or services in return. In contrast, the payments made by the government to defendant are part of a contract under which the government receives goods and services. I conclude that *DeVargas,* not *Bowen* or *Baylor University Medical Center,* supplies the applicable rule. I also note that this result is consistent with the definition of "federal financial assistance" used in federal regulations. That definition specifically excludes procurement contracts. *See* 14 C.F.R. § 1251.-102(f) (1992) (NASA regulation); 32 C.F.R. § 56.3(b) (1991) (Department of Defense regulation).

As the party opposing defendant's motion for summary judgment, plaintiff has the burden of producing evidence on all essential elements of his claim. I find no authority that either payment pursuant to a contract or use of government-owned property (or both together) constitute "federal financial assistance." I find this evidence wholly insufficient to support the conclusion that the government intended to subsidize defendant. No reasonable jury could conclude that defendant receives financial assistance. *See Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). I therefore grant defendant's motion for summary judgment on plaintiff's Rehabilitation Act claim. Defendant's motion to dismiss this claim is denied as moot.

## V. PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

■■■ In its motion to dismiss, defendant argues that this claim is preempted by the Colorado Workers' Compensation Act. If plaintiff is eligible for compensation under the Workers' Compensation Act, then he cannot maintain a private tort action for the same injury. *In re Question Submitted by United States Court of Appeals for the Tenth Circuit,* 759 P.2d 17, 21 (Colo. 1988). The act provides compensation for injuries "arising out of" and "in the course of employment." Colo.Rev.Stat. § 8–41–301 (1990 Supp.) (formerly the Workmen's Compensation Act, Colo.Rev.Stat. § 8–52–102 [1986 Repl.Vol.]); *In re Question,* 759 P.2d at 19–24. Neither party disputes that the injury occurred in the course of employment.

The issue is whether plaintiff has alleged facts showing that the injury did not "arise out of" plaintiff's employment. "[A]n injury *arises out of* employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." *In re Question,* 759 P.2d at 20 (quoting 1 Larson, *Workmen's Compensation Law* § 6.50, at 3–6 [1985] [emphasis in original]). An injury arises out of employment if a "neutral force" causes the injury. *Younger v. Denver,* 810 P.2d 647, 649 (Colo.1991) (en banc); *In re Question,* 759 P.2d at 20. A neutral force is one that is not specifically targeted at the plaintiff and not "distinctly associated with the employment." *Younger,* 810 P.2d at 649. *See Stamper v. Hiteshew,* 797 P.2d 784, 786 (Colo.Ct.App.1990), *cert. denied,* 1990 WL 43427, 1990 Colo. LEXIS 635 (Colo. 1990).

■■■ Whether an injury arises out of employment depends on the facts and circumstances of each case. *In re Question,* 759 P.2d at 20. Colorado courts have re-

fused to dismiss tort claims where plaintiff has alleged that defendant's acts were specifically targeted at plaintiff. *Stamper v. Hiteshew,* 797 P.2d at 785–86 (evidence of sexual harassment directed specifically at plaintiff was sufficient to show that injury did not arise out of employment); *Patel v. Thomas,* 793 P.2d 632, 636–37 (Colo.Ct. App.1990) (trial court erred in dismissing claim where plaintiff alleged sexual harassment directed at plaintiff); *cf. In re Question,* 759 P.2d at 25–26 (evidence that a sexual attack was not specifically directed at plaintiff established that injury did "arise out of" employment). In reviewing the sufficiency of a claim, the complaint must be liberally construed, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and allegations assumed to be true. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Dismissal of a claim is improper unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). Plaintiff alleges that he was verbally abused and subjected to numerous racial and ethnic jokes. *Complaint* ¶ 4. Construing the complaint liberally, plaintiff may be able to prove that the harassment was directed specifically at him. If plaintiff provides this evidence, then plaintiff may be entitled to seek relief outside the Workers' Compensation Act. *See Stamper,* 797 P.2d at 785–86; *Patel,* 793 P.2d at 636–37. Accordingly, I cannot dismiss the claim.

■■■ Defendant also moves for summary judgment on the grounds that defendant's conduct is not outrageous as a matter of law. For the purpose of the motion, plaintiff agreed to defendant's statement of undisputed material facts. *Defendant's Brief in Support of Motion for Partial Summary Judgment* at 2–4 (filed July 9, 1991); *Plaintiff's Response to Defendant's Motion for Partial Summary Judgment* at 1 (filed July 30, 1991). The facts show that co-workers told racial jokes. One co-worker used the term "dumb fucking nigger" at least twice in plaintiff's presence.

Two racially derogatory written items were placed at plaintiff's desk; one derogatory cartoon was circulated among workers. Contrary to defendant's assertion, plaintiff alleges that supervisors made racial and derogatory remarks, and has provided some evidence of those remarks. *Plaintiff's Response to Defendant's Motion for Partial Summary Judgment* at 2; *Complaint* ¶ 18.

The tort of intentional infliction of emotional distress requires "extreme and outrageous" conduct. *Rugg v. McCarty,* 476 P.2d 753, 756 (Colo.1970). To be outrageous, the conduct must "go beyond all possible bounds of decency." *Id.* Since there is no dispute of material fact, defendant is entitled to judgment only if no reasonable jury could find the conduct to be outrageous. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986). *See also Bauer v. Southwest Denver Mental Health Ctr., Inc.,* 701 P.2d 114, 118 (Colo.Ct.App.1985). Although discharge from employment, without more, is not outrageous conduct, plaintiff has produced evidence of racial harassment in addition to his discharge. *See Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 384 (10th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989).

Defendant relies on *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379 (10th Cir.1991). Because *Daemi* involves Oklahoma law, it is not binding; nor do I find that case persuasive. In *Daemi,* the Tenth Circuit upheld the district court's conclusion that mere insults would not support a claim for intentional infliction of emotional distress. However, plaintiff's evidence in this case could support a finding that the racial comments were not "mere insults" but rather an intentional pattern of harassment. Viewing the evidence in the light most favorable to plaintiff, I find that a reasonable jury could find defendant's conduct to be outrageous. I therefore deny summary judgment on this claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512.

Defendant moves to strike all tort damages if the section 1981 claim and intentional infliction of emotional distress claims are dismissed. *See Defendant's Motion to Strike and for Partial Dismissal* ¶ 4 (filed Dec. 27, 1990). Because I decline to dismiss the intentional infliction of emotional distress claim, I decline to strike all claims for tort damages. It is therefore

ORDERED as follows:

(1) Defendant's motion to dismiss plaintiff's claims applying the Civil Rights Act of 1991 is granted, and plaintiff's amended complaint is hereby stricken;

(2) Defendant's motion to strike plaintiff's demand for a jury and punitive damages for plaintiff's title VII claim is granted;

(3) Defendant's motion for summary judgment on plaintiff's title VII retaliation claim is granted;

(4) Defendant's motion to dismiss plaintiff's section 1981 claim is granted;

(5) Defendant's motion for summary judgment on plaintiff's Rehabilitation Act claim is granted; and

(6) Defendant's remaining motions are denied.